IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                                  Case Number: 3:16CR00110

ANGELA ROY

### GOVERNMENT'S RESPONSE IN OPPOSITION TO *PRO SE* MOTION FOR SENTENCE REDUCTION UNDER AMENDMENT 821 AND 18 U.S.C. § 3582

Defendant Angela Roy has filed a motion under 18 U.S.C. § 3582(c)(2) seeking a reduced sentence based on Part A of Amendment 821 to the Sentencing Guidelines ("USSG"). Doc. 178. She did not receive any "status" points under USSG § 4A1.1(d) and is not eligible for retroactive relief under USSG § 1B1.10(d) (Nov. 1, 2023). Her motion should be denied.

### I.     Background.

The morning of September 23, 2016, at 10:28 am, a woman called the U.S. Post office in Randolph, Mississippi, and asked when the post office would open. ROA.307.[1] The Postmaster advised that the post office would open at 10:30 am. ROA.307. Shortly thereafter, Angela Roy's codefendant, Richard Thomas Scott, entered the post office and asked the Postmaster about renting a post office box. ROA.308. When the Postmaster turned to show Scott the various box sizes, he shot at her three times with a handgun, hitting her one time in her raised left forearm. ROA.311-12.

---

[1] Record citations are taken from the Fifth Circuit record on appeal or to documents in the District Court Clerk's file of the case.

Scott testified that he and Angela Roy committed the armed robbery. ROA.396. He testified it was Roy's idea. ROA.396. The plan was to steal money and money orders. ROA.397. Scott and Roy obtained the gun from a car they previously burglarized. ROA.399. They planned to leave "no witnesses," that is, kill any witnesses. ROA.399. Scott testified it was Roy who called the post office a few minutes before the robbery. ROA.400.

Scott said Roy remained outside as he entered the post office to rob it, and subsequently shot the Postmaster. ROA.400-01.

When shot, the Postmaster hit the floor and sought refuge behind a small wall in the post office while Scott jumped the counter and entered the working area of the post office. ROA.313. The Postmaster then fled out a side door toward a neighbor's house. ROA.315.

As the Postmaster fled, she looked back into the post office parking lot and saw a woman wearing a yellow bandana over her face standing next to a gold Pontiac G6. ROA.314. Scott took the Postmaster's purse and keys and fled with Roy. ROA.319-20. Scott and Roy drove away from the post office but went the wrong way and had to turn around, driving back by the post office. ROA.315; ROA.401.

As Scott and Roy passed the post office and the neighbor's house, Roy urged Scott to shoot the Postmaster who was then standing at the neighbor's door, but the weapon had jammed in the post office, so he could not. ROA.401.

The Postmaster knocked on the neighbor's door, but the neighbor did not let her enter. ROA.315. The Postmaster observed the gold Pontiac G6 drive past. ROA.315-16. After the car drove by, the Postmaster ran to a convenience store located at the corner of the post office road and a nearby highway. ROA.316. There the local sheriff's office was contacted, as well

2

as the Mississippi Highway Patrol and U.S. Postal Inspectors. ROA.335; ROA.359; ROA.452.

After the armed robbery, Scott and Roy fled to South Alabama. ROA.406. They soon learned the "Feds" were looking for them. On or about September 27, 2016, they drove past a local police station and saw Roy's father's vehicle at the station. ROA.406. Upon seeing this, Scott and Roy collected Roy's daughter and fled to Louisiana on the way to Texas. ROA.407.

Roy attempted to create an alibi for herself through the testimony of her daughter. Her daughter testified that Roy and Scott took her to Lashay Owen's house in Mobile, Alabama, on September 21, 2016, and left her there on September 22nd. ROA.622. She received a telephone call from Roy late that evening. ROA.623. Then she went to sleep, and Roy and Scott arrived at Owen's house the next morning. ROA.627. When Roy's daughter woke up around 9am, Roy was there, but Scott was gone. ROA.629. According to Roy's daughter, later that day, around 5:30, or 6, or 7, Scott returned. ROA.631.

Understanding that Roy intended to present an alibi defense, the government had Lashay Owens testify in its case-in-chief. Owens testified that Roy brought Scott to her home sometime in September. ROA.562-63. Roy then brought her daughter to Owens' house. ROA.563. Roy and Scott left, leaving Roy's daughter with Owens. ROA.563. Owens testified that Roy and Scott returned after they were gone for approximately 24 to 36 hours. ROA.564. Owens testified that Scott never left her house without Roy, and Roy was never at her house without Scott. ROA.564. Owens testified that when Roy and Scott returned, the pair had a handgun and, further, it smelled like it had been recently fired. ROA.565-66.

3

Granite Telecommunication in Quincy, Massachusetts, provides telephone services to post offices, including the Randolph, Mississippi post office. The telephone number of the call made to the Randolph post office on September 23, 2016, was identified and sent to postal inspectors that day. ROA.376-78. The telephone number was associated with a social media account of Scott. After Roy was identified as an associate of Scott and investigators determined she owned a Pontiac G6, a Deputy U. S. Marshal entered Roy's car tag into the Mississippi, Alabama, and Louisiana tag reader systems to be alerted if it was logged crossing state lines. ROA.384.

Postal Inspectors and officers in Louisiana were alerted when the Pontiac G6, bearing Roy's tag number, crossed into Louisiana. ROA.462. Officers in Lockport, Louisiana, then located the car parked at a local apartment complex. ROA.462. Once an officer verified the tag number, he set up surveillance on the vehicle and notified his superiors. ROA.463-64.

LaFourche Parish, Louisiana Sheriff Deputies responded to the apartment complex and arrested Scott as he approached the vehicle. ROA.467. Roy was arrested shortly thereafter. ROA.467. The deputies then obtained a search warrant for the Pontiac G6. ROA.467-68. One document seized from the car showed that Angela Roy was the owner of the vehicle. ROA.473. Officers also found Roy's driver's license. ROA.479.

Postal Inspectors learned of a car burglary that occurred the night before the post office robbery. The victim had left her car outside a gym and when she returned to it, she found the car window broken and her gym bag with clothing, purse, and costume jewelry stolen. ROA.489-95. Later that night at the Amory, Mississippi Walmart, Roy was caught on

4

surveillance video wearing clothing taken from the victim's car. ROA.492-93; ROA.506; ROA.548; ROA.551.

Prior to trial, the Court denied the government's attempt to introduce testimony of another of Roy's prior boyfriends, Michael Brazzell, who would have testified that Roy had approached him several months earlier and asked him to help her rob the Randolph Post Office. He advised that he and Roy drove to North Mississippi from South Alabama and cased the Randolph Post Office. Brazell advised that Roy wanted to stay in the car while he committed the robbery of the post office. He further stated that Roy told him they would need to kill the Postmaster because the Postmaster knew her. Doc. 58.

Scott pled guilty prior to Roy's trial. Roy's case was tried from October 23 through October 25, 2017. ROA.132. As noted above, Scott testified that Roy planned the robbery and picked the target post office.

The jury convicted Roy on both counts. ROA.132.

A Presentence Investigation Report (PSR) was completed by the U.S. Probation Service. Doc. 941-63. A review of the criminal history calculation reveals that Roy was assigned no criminal history "status" points under USSG § 4A1.1(d). PSR, ¶¶ 36-44, pp. 8-13.

Roy earned 20 criminal history points based on 9 convictions from 2000 through 2011. Id. Before sentencing, she objected to her criminal history calculation, arguing that a 2001 fraud conviction and a 2002 breaking and entering conviction were not separated by an intervening arrest and should be counted as the same crime for criminal history points' calculations. Defendant's Objections to PSR, ROA.936. At sentencing, through counsel, Roy

5

withdrew the objection, advising the Court that US Probation had shown her the arrest records. ROA.760.

After a hearing on the objection, the District Court rejected Roy's objection to the enhancement and sentenced her to a 270-month term of incarceration, consisting of consecutive terms, 150 months for the robbery and 120 months for the discharge of the firearm during and in furtherance of the robbery. ROA.759; ROA.164-70. Both Roy and her counsel filed notices of appeal. ROA.171-72; ROA.175; ROA.187-88.

The Fifth Circuit Court of Appeals affirmed Roy's convictions and sentence. *United States v. Roy*, 765 Fed. App'x. 85 (5th Cir. 2019). The U.S. Supreme Court denied review of the case. 140 S. Ct. 525 (2019).

Roy filed a motion for compassionate release because of the COVID-19 coronavirus pandemic. Doc. 136. The Court denied the motion. Doc. 142. She filed the instant § 2255 Motion to Vacate. Doc. 138. The Court ordered the government to respond, which it did. Docs. 155 and 157. She filed the instant Motion to Amend her Motion to Vacate. Doc. 164. The Court denied her motion. Doc.165. The Court later denied Roy's § 2255 motion. Docs. 174 and 175.

She now files a pro se motion for sentence reduction under Amendment 821 seeking sentence reduction based on Amendment 821's recalculation of status points and its retroactivity under 1B1.10. Doc. 178.

## II. Discussion.

In Part A to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history, which now appears in Section 4A1.1(e). The amended provision states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Thus, a person who otherwise presents 7 criminal history points or more now receives 1 additional "status" criminal history point, instead of 2, while a person who otherwise presents 6 criminal history points or fewer receives no status points.

On August 24, 2023, the Commission decreed that this change may be applied retroactively. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

Roy presents the current motion pursuant to 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In Section 1B1.10 of the Guidelines, the Sentencing Commission has identified the amendments which may be applied retroactively pursuant to this authority, including Part A of Amendment 821, and articulated the proper procedure for implementing those amendments.

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court addressed the process for application of a retroactive guideline amendment, emphasizing that Section 1B1.10 is

7

binding. The Court declared: "Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 821. The Court required district courts to follow a two-step approach:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in §1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, §1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Ibid.*
>
> Consistent with the limited nature of § 3582(c)(2) proceedings, §1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. §1B1.10(b)(2)(A). . . .
>
> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

*Dillon*, 560 U.S. at 827.

Consistent with these rules, Roy is not eligible for a reduction in sentence, and her motion fails at the first step. Section 1B1.10(a)(2) provides that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . (B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range." That is the situation here, and therefore the motion must be denied.

8

Roy had no status points assigned when she was originally sentenced. Were the 2023 amended provision applied to her case, she would still receive no status points. Thus, Amendment 821 does not change Roy's USSG guideline range. In this circumstance, no relief is applicable or permissible.

### Conclusion

Roy's pro se motion for sentence reduction should be denied.

This submitted the 31st day of January, 2024.

        Respectfully submitted,

        CLAY JOYNER
        United States Attorney
        Mississippi Bar No. 10316

        */s/ Paul D. Roberts*
        PAUL D. ROBERTS
        Assistant United States Attorney
        Mississippi Bar No. 5592

## CERTIFICATE OF SERVICE

I, Paul D. Roberts, certify that I electronically filed the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO *PRO SE* MOTION FOR SENTENCE REDUCTION UNDER AMENDMENT 821 AND 18 U.S.C. § 3582** with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Gregory S. Park
greg_park@fd.org

and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

Angela Roy, Reg. No. 36906-034
FMC-Carwsell
P.O. Box 27137
Fort Worth, TX 76127

This the 31st day of January, 2024.

                                                  /s/ Paul D. Roberts
                                                  PAUL D. ROBERTS
                                                  Assistant United States Attorney